IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AUBREY REEL, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | Civil Action No. 4:26-cv-02698 |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| REACH UNLIMITED, INC., | § | |
| | § | |
| *Defendant*. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Aubrey Reel ("Plaintiff" or "Reel") now files this complaint against Defendant

Reach Unlimited, Inc. ("Defendant" or "Reach") for claims arising under the Americans with

Disabilities Act of 1990 ("ADA") and the Texas Commission on Human Rights Act ("TCHRA").

In support, Plaintiff states as follows:

### PARTIES

1.      Plaintiff Aubrey Reel is a citizen of the United States and a resident of Plantersville,

Texas.

2.      Defendant Reach Unlimited, Inc. is a private entity that transacts business in the

state of Texas.  It may be served with process by serving Lauren T. Black, located at 11832 Mueller

Cemetery Road, #200 Cypress, Texas 77429, or as may otherwise be permitted under Rule 4 of

the Federal Rules of Civil Procedure and/or the Texas long-arm statute.

### JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over the claims described in this

Complaint pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the Americans with

Disabilities Act, 42 U.S.C. § 12101 et seq.

4.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal claims.

5.      This Court has personal jurisdiction over Defendant because it has continuously and systematically performed a substantial amount of business within the state of Texas and, moreover, is being sued herein for illegal conduct against the Plaintiff that occurred within the state of Texas.  Accordingly, this Court has both general and specific jurisdiction over the Defendant.

6.      Venue is proper in the United States District Court for the Southern District of Texas pursuant to 42 U.S.C. § 2000e-5(f)(3) because all or part of the unlawful employment practices committed by the Defendant occurred in this district.

### FACTS

7.      Defendant Reach Unlimited, Inc. is a private non-profit organization located in Cypress, Texas.

8.      Reach Unlimited, Inc. provides services to individuals with intellectual and developmental disabilities. The organization employs over 100 people and operates an administrative office at 11832 Mueller Cemetery Road, Suite 200, Cypress, Texas 77429.

9.      Despite its stated mission to help individuals with disabilities, Reach Unlimited discriminated against and retaliated against Plaintiff for disclosing her own disability and requesting reasonable accommodations.

10.     Plaintiff began working for Reach Unlimited, Inc. in July 2023 as an Accounting Manager.

11.     Plaintiff is an individual with Autism Spectrum Disorder, a mental impairment that

substantially limits at least one major life activity, including communicating, specifically in unstructured social interactions, concentrating, thinking, interacting with others, and working.

12.     Plaintiff's autism also causes extreme sensory sensitivities to light, sound, and smells, which can cause sensory overwhelm, diminishing her ability to concentrate and impacting executive functions in a typical or unaccommodated office environment, causing severe stress, including blood pressure spikes, migraines, and emotional dysregulation.

13.     Despite her autism, Plaintiff was qualified and able to perform her job as Accounting Manager. Plaintiff had the ability to supervise and discipline employees properly and was hired in part to professionalize and modernize Reach Unlimited's accounting operations.

14.     Plaintiff successfully brought the organization's books into compliance after three years of backlog, completing the cleanup and reconciliation in under three months. She implemented accounting software that saved 30 hours of staff time per week, restructured the accounts receivable process, and developed replicable monthly processes to improve accuracy and reduce workload.

15.     In less than 18 months, Plaintiff successfully completed three clean financial statement audits. These accomplishments were well-documented in her performance reviews and meeting notes.

16.     In March 2024, Plaintiff was promoted to Accounting Director after obtaining her CPA license.

17.     Later in March 2024, Plaintiff disclosed her autism and sensory sensitivities to Susie Dunn, Reach Unlimited's Human Resources Director. Plaintiff detailed how her autism affects interpersonal interactions and causes sensory sensitivity.

18.     Shortly after Plaintiff disclosed her autism in March 2024, she was stripped of

3

supervisory powers and authority over her subordinates, including Laura Abron, an Accounting Assistant.

19.    Plaintiff was never coached or counseled on any interpersonal shortcomings prior to these changes. She was not provided any written performance documentation justifying the removal of her supervisory duties.

20.    After Plaintiff verbally disclosed her autism and sensory issues to HR in March 2024, subordinate Laura Abron began disrupting Plaintiff's work environment with loud singing and strong-smelling foods, including raw onions and hard-boiled eggs.

21.    This disruptive behavior occurred from March to May 2024, making concentration impossible for Plaintiff and often forcing her to finish work at home.

22.    HR acknowledged Laura Abron's behavior as likely intentional disrespect but failed to stop it. Instead, HR suggested Plaintiff wear headphones or close her office door, despite Plaintiff's disability-related needs.

23.    In April 2024, subordinate Jonathan Wood falsely claimed Plaintiff created a hostile work environment. HR found no evidence to support this claim, and HR Director Susie Dunn acknowledged Plaintiff's protective nature.

24.    Anytime Plaintiff had a problem with a subordinate employee for poor performance or unprofessional behavior, she was undermined and told to do nothing, despite the fact that she was supposed to have supervisory authority to correct bad behavior.

25.    On May 22, 2024, Plaintiff made a formal written request for ADA accommodations to HR Director Susie Dunn and her supervisor Lauren Black.

26.    Plaintiff's accommodation request included more communication in writing for her to understand feedback she was receiving as a manager and to be able to work from home while

4

still participating in meetings and supervising employees.

27. This formal accommodation request was completely ignored by Reach Unlimited. Plaintiff received no response for over eight months.

28. The office environment at Reach Unlimited was sensory-overwhelming for Plaintiff, with temperatures over 90 degrees Fahrenheit, bathroom odors seeping into her office, and loud door slams shaking the building.

29. These sensory-overwhelming conditions exacerbated Plaintiff's sensitivities and caused her severe stress, blood pressure spikes, and migraines. Working from home resulted in improved health for Plaintiff, with no migraines and stable blood pressure.

30. After discussing her autism and sensory concerns with HR again in April 2024, Plaintiff was required to work from home four days a week starting in May 2024.

31. In June 2024, after Plaintiff raised sensory issues again, she was required to work from home five days a week, isolating her from her team and duties in retaliation for her accommodation requests.

32. On June 21, 2024, after Plaintiff sent a professional email requesting consideration for noise and strong-smelling foods in the office, HR Director Susie Dunn sent an email mandating that Plaintiff work from home full-time and come to the office only as required.

33. This directive to work from home full-time occurred before any formal acknowledgment or response to Plaintiff's written ADA accommodation request submitted on May 22, 2024.

34. The company slowly removed more and more of Plaintiff's supervisory duties and reassigned her direct reports to others, leaving her isolated. This appeared to be a way for the company to slowly strip Plaintiff of her job responsibilities until they could justify terminating her

5

employment.

35.    On January 29, 2025, Plaintiff formally requested accommodations again from her supervisor, Lauren Black, and HR Director Susan Dunn regarding how she received feedback and the company's expectations of her communication and performance.

36.    Plaintiff also requested mediation for ADA accommodations and reinstatement of supervisory duties in her communication on January 29, 2025.

37.    On February 14, 2025, Reach Unlimited denied mediation, refused to restore Plaintiff's supervisory role, and demanded medical proof of Plaintiff's disability nearly a year after her initial disclosure.

38.    On February 14, 2025, during a recorded phone call, HR Director Susie Dunn explicitly stated that mediation was "not part of our policy," refused to put any accommodations in writing, and for the first time formally requested proof of disability.

39.    During this same February 14, 2025, phone call, Susie Dunn insisted that working from home was not a reasonable accommodation and dismissed Plaintiff's diagnosed sensory processing and communication needs.

40.    HR Director Susie Dunn admitted ignorance of ADA obligations, claiming work-from-home is not reasonable, denying the company's obligation for the interactive process, and stating decisions prioritize the company's interest.

41.    In response to the company's demand for proof of disability, Plaintiff's Licensed Psychological Associate submitted a letter dated February 25, 2025, outlining specific accommodations needed to support Plaintiff's success.

42.    On February 26, 2025, Plaintiff formally reiterated her accommodation requests in writing.

43. On February 27, 2025, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, bearing Charge Number 460-2025-04039.

44. After Plaintiff filed her initial EEOC Charge on February 27, 2025, the company isolated her and began plotting a way to terminate her employment.

45. As early as June 16, 2025, the company was having phone calls with their attorneys at Jackson Lewis to discuss "strategy" of separating Plaintiff "during pending administrative charge asserting discrimination claims."

46. There were at least two documented calls about the company's "strategy" to terminate Plaintiff's employment while her EEOC charge was pending.

47. On August 11, 2025, Plaintiff was terminated from her position at Reach Unlimited, Inc.

48. The company stated that Plaintiff's position was being eliminated "due to operational effectiveness."

49. This explanation for termination was vague and not supported by any legitimate business justification. The company offered Plaintiff a severance package in exchange for waiving her discrimination claims.

50. Reach Unlimited has never outsourced accounting leadership positions before in its over 40-year history. The alleged decision to outsource Plaintiff's role occurred immediately after Plaintiff's protected EEOC activity.

51. The company's stated reason for eliminating Plaintiff's position was pretextual, and Plaintiff was actually terminated in retaliation for filing her EEOC Charge and requesting accommodations for her autism.

52. In July 2024, Plaintiff received a performance evaluation covering the period from

July 5, 2023, to July 4, 2024. Despite the adverse actions taken against her following her disability disclosure, Plaintiff received an overall rating of "Very Good" (4.6 out of 5) with a recommendation for a 5% merit increase. The only deduction from a higher rating occurred in the category of managing and assuring completion of work in the Accounting Department, where the evaluator specifically noted: "Challenges with environmental conditions and sensory issues have altered work location to a remote setting." All other competencies were rated "Outstanding" or "Very Good," with positive comments highlighting Plaintiff's efficiency, process improvements, and contributions.

53.    This performance evaluation specifically recognized Plaintiff's organizational leadership, problem-solving ability, and successful implementation of department-wide improvements, demonstrating that her job performance remained strong even after Reach Unlimited stripped her of supervisory duties and forced her to work remotely.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

54.    On February 27, 2025, Plaintiff timely filed a charge of discrimination with the EEOC and the Texas Workforce Commission Civil Rights Division for her claims of discrimination and retaliation.

55.    The EEOC issued Plaintiff a Right to Sue letter on February 2, 2026.

56.    This lawsuit has been filed within 90 days of the EEOC's issuance of that Notice. Consequently, this lawsuit has been filed within 90 days of Plaintiff's receipt of that Notice.

57.    Based on the foregoing, Plaintiff has exhausted all administrative remedies required under the ADA for the claims arising from her EEOC Charge.

### FIRST CAUSE OF ACTION (DISABILITY DISCRIMINATION UNDER ADA AND TCHRA)

58.    Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

8

59.   Plaintiff is a qualified individual with a disability within the meaning of the Americans with Disabilities Act ("ADA") and the Texas Commission on Human Rights Act ("TCHRA").

60.   Plaintiff has Autism Spectrum Disorder, a mental impairment that substantially limits at least one major life activity, including communication and the ability to interact with others in unstructured social situations.

61.   Defendant was aware of Plaintiff's disability, having been informed of her Autism Spectrum Disorder in March 2024.

62.   Plaintiff was qualified for her position as Accounting Director and able to perform the essential functions of her job with or without reasonable accommodation.

63.   Plaintiff suffered adverse employment actions, including being stripped of her supervisory duties, being forced to work remotely in isolation, and ultimately being terminated.

64.   Plaintiff's disability was a motivating factor in Defendant's decision to strip her of supervisory duties and terminate her employment.

65.   Defendant's stated reasons for the adverse employment actions, including the claim that Plaintiff's position was eliminated due to operational effectiveness, were pretextual.

66.   Plaintiff would not have suffered these adverse employment actions but for her disability.

67.   Such conduct violates the ADA, 42 U.S.C. § 12101 et seq., and the TCHRA, Tex. Lab. Code § 21.001 et seq.

68.   Plaintiff has been damaged by Defendant's unlawful discrimination.

### SECOND CAUSE OF ACTION (FAILURE TO ACCOMMODATE UNDER ADA AND TCHRA)

69.   Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

9

70.    Plaintiff is an individual with a disability as defined by the ADA and TCHRA.

71.    Plaintiff requested reasonable accommodations for her disability on May 22, 2024, and again on January 29, 2025.

72.    Plaintiff's requested accommodations included written communication for clarity, structured feedback, and the ability to work from home while still participating in meetings and supervising employees.

73.    The requested accommodations were reasonable and would not have caused undue hardship to Defendant.

74.    Defendant failed to engage in the required interactive process to determine appropriate accommodations.

75.    Defendant ignored Plaintiff's formal accommodation requests for over eight months and refused to provide written confirmation of any accommodations.

76.    Defendant refused mediation and insisted that work-from-home was not a reasonable accommodation, demonstrating a fundamental misunderstanding of ADA obligations.

77.    Defendant's failure to accommodate caused Plaintiff harm, including isolation from her team, removal of supervisory duties, and ultimately termination.

78.    Such conduct violates the ADA, 42 U.S.C. § 12101 et seq., and the TCHRA, Tex. Lab. Code § 21.001 et seq.

79.    Plaintiff has been damaged by Defendant's failure to reasonably accommodate her disability.

### THIRD CAUSE OF ACTION (RETALIATION UNDER ADA AND TCHRA)

80.    Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

81.    Plaintiff engaged in activity protected by the ADA and TCHRA by requesting

10

reasonable accommodations for her disability and filing a charge of discrimination with the EEOC on February 27, 2025.

82.     Defendant took materially adverse employment action against Plaintiff by terminating her employment on August 11, 2025.

83.     A causal connection exists between Plaintiff's protected activity and the adverse employment action, as demonstrated by the temporal proximity of approximately five and a half months between the EEOC filing and termination.

84.     Defendant's stated reason for terminating Plaintiff, that her position was eliminated due to operational effectiveness, is pretextual.

85.     Evidence of pretext includes Defendant's discussions with attorneys as early as June 16, 2025, regarding strategy for separating Plaintiff during her pending EEOC charge.

86.     Plaintiff would not have been terminated but for her protected activity under the ADA and TCHRA.

87.     Such conduct violates the ADA, 42 U.S.C. § 12101 et seq., and the TCHRA, Tex. Lab. Code § 21.001 et seq.

88.     Defendant acted with malice and reckless disregard for Plaintiff's statutorily-protected rights.

89.     Plaintiff has been damaged by Defendant's unlawful retaliation.

### ATTORNEY FEES

90.     If Plaintiff prevails, she is entitled to an award of reasonable and necessary attorney fees under the fee-shifting provisions of the ADA and TCHRA.

### JURY DEMAND

91.     Plaintiff hereby demands a trial by jury on all claims that may be tried to a jury.

11

## PRAYER FOR RELIEF

Plaintiff hereby prays that Defendants be cited to appear and that, upon trial, the Court enter a judgment in her favor for the following:

a. back pay;
b. compensatory damages for emotional distress, pain and suffering, and other non-economic losses;
c. punitive damages;
d. reinstatement and/or front pay;
e. taxable court costs;
f. equitable relief;
g. attorney fees; and
h. such other and further relief to which she may show herself entitled.

Respectfully submitted,

THROCKMORTON LAW FIRM PLLC

By: */s/Connor Throckmorton*
Connor Throckmorton
Fed. Bar ID. 3065092
Texas Bar No. 24103965
5718 Westheimer Road, Suite 1000
Houston, Texas 77057
Telephone:    (713) 400-6173
Facsimile:    (713) 583-8380
Email:        connor@throckmortonlaw.com

***ATTORNEY FOR PLAINTIFF***